# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case No.: 1:22-CR-00281 |
| Plaintiff, | : | **JUDGE DONALD C. NUGENT** |
| vs. | : | |
| | : | **DEFENDANT RUEBEN SCHWARTZ'S** |
| **RUEBEN SCHWARTZ**, | : | **RESPONSE TO GOVERNMENT'S** |
| | : | **MOTION TO REVOKE ORDER OF** |
| Defendant. | : | **RELEASE** |

Now comes the Defendant, **RUEBEN SCHWARTZ**, by and through his undersigned counsel, and respectfully enters his Response to the Government's Motion To Revoke Defendant's Order of Release On Bond, after a full detention hearing on this matter[1].

As set forth below, it is Defendant's position in Response, that the arguments presented by the Government in seeking to deny Defendant's release, under any conditions, is unreasonable and without merit and should be denied under the policy of law mandated by the Due Process Clause of the Fifth Amendment to the United States Constitution, Rule 46 of the Federal Rules of Criminal Procedure and the Bail Reform Act of 1984.

The reasons which more fully support Defendant Schwartz's Response, are as follows:

---
[1] Transcript of the May 26, 2022 Detention Hearing is filed at ECF 18.
1

**I.   INTRODUCTION**:

As was made clear at the Detention Hearing conducted by the Magistrate Judge, in denying the Government's request for pretrial detention of the Defendant in a non-violent, non-drug, non-racketeering offense, without a presumption of detention, is that adequate conditions exist to reasonably assure the Defendant will not pose a risk of flight or danger to the community. (*See*: Detention Hearing transcript at ECF 18, pages 150-153).

As made clear at the Detention Hearing, the Government's charged offense and request for detention was based entirely upon hearsay statements, attributed to inherently unreliable sources of information, all of whom had a bad faith animus toward the Defendant, and a clear and apparent motive to hurt and falsely implicate the Defendant in criminal wrongdoing. Magistrate Judge Burke correctly rejected the Government's position on detention. Magistrate Judge Burke heard, considered and rejected all of the allegations contained in the Government's Motion to Revoke at ECF 20. This Court should similarly deny the Government's Motion to Revoke Order of Release.

As set forth in the following Response Memorandum, and documented in the Detention Hearing transcript, the Complaint Affidavit relied upon by the Government, the one-count Indictment returned by the grand jury,[2] and the Government's opposition related in its Motion to Revoke Bond, the Government's position to deny Defendant's release on bond pending final disposition of this case is unreasonable and without merit and predicated on unreliable sources of information who have given different

---

.[2] See: Arrest Complaint Affidavit, attached as Exhibit "A" and one-count Indictment at ECF 12.

statements at different times on the same subject matter - their relationship with the Defendant - to purposely hurt and unfairly prejudice the Defendant and his fundamental right to a fair trial with due process of law.

The essence of Defendant's right to a fair trial with due process of law was perhaps best articulated by United States Supreme Court Justice Fortas:

> "Insistence upon procedural standards, commanded by our Constitution, is not a technicality . . . Constitutionalism is not a technicality. Constitutional rights are not technicalities . . . Constitutional procedure is the heart, conscience, the soul of a civilized community. It is the basic principle for which men from the earliest days have fought and died. What is liberty if it is not the right to due process of law, in all of its forms, before the state may consign us to prison or take our life."*

**II.  FACTS**:

The Defendant is 49 years of age with deep roots in the community in which he lives. The Defendant owns his home at Furnace Road, in Conneaut, Ohio (street number intentionally omitted), for over 24 years. The Defendant raised three children at this residence, twin 17-year-old boys, both of whom have just finished their Junior year in High School; and, a 19-year-old daughter, who just completed her first year in college. On October 7, 2019, the Defendant's then wife and the mother of his children died after a debilitating bout with cancer.

The Defendant is a very successful businessman in construction and real estate in the Conneaut, Ohio area. Over the last 24 years the Defendant, through his own work ethic, has become extremely successful in the Conneaut area amassing a net worth in excess of 1.5 million dollars. *See*: Pretrial Services Report.

---

*The Fight for Due Process, Case and Comment 73 (November – December issue 1968).

3

In addition to a construction company, Schwartz Construction, the Defendant owns four other legal, legitimate successful businesses in the Conneaut area. All of these businesses generate legal cash flow. The Defendant has also purchased and refurbished other residential and commercial properties in the area.

The Defendant has no criminal history to speak of other than a 27 year old conviction for what would be a misdemeanor, when the Defendant was in his early 20s. (Transcript, ECF 18, page 130).

The Defendant suffers from significant health issues having been diagnosed with Stage IV Kidney Disease by the Cleveland Clinic.

On May 19, 2022, the Defendant was arrested and taken into custody in this case. The basis for the Defendant's arrest was an arrest warrant complaint filed under seal on May 18, 2022. Following the Defendant's arrest on May 19, 2022, the case was unsealed along with the Arrest Warrant Complaint and Affidavit.

The Government moved for pretrial detention of the Defendant and a hearing was conducted on the issue of the Defendant's pretrial detention without bond on May 25, 2022. (ECF 18).

Upon disclosure to defense counsel of the Arrest Warrant Complaint and Affidavit, it became clear that the Government's allegations against the Defendant were based on statements related by individuals that had a clear and apparent animus toward the Defendant with a motive to falsely implicate the Defendant in criminal wrongdoing.

Person 3 was a jaded lover of the Defendant, as noted at Paragraph 14 of the Complaint Affidavit, this individual previously had both a romantic and professional relationship with the Defendant. This individual also has a criminal history for domestic violence in 2019, and had been previously determined to be unreliable in a Court finding in which she lost custody of her children.[3] The Defendant had a prior sexual relationship with Person 3 but terminated the relationship and soon after Thanksgiving, 2021, married his current wife. Person 3 resented the Defendant over this break up. What is clear, is that Person 3's present sense impression of Defendant Schwartz's alleged threats, was that of a joke. (Complaint Affidavit, paragraph 15). After being rejected by Defendant for another woman, Person 3 changed her story yet again.

The Government also relied upon information purportedly related by Conspirator 1 whom also had a clear and apparent motive to falsely implicate the Defendant, and was a known associate of Person 3. Conspirator 1 was a former laborer in the area whom the Defendant employed for construction work. Conspirator 1 is in his early 20s and had a relationship with many subcontractors in the construction business.

Conspirator 1 was questioned at length by Fire Marshals concerning a fire occurring at a building owned by one of Defendant's businesses. At that time Conspirator 1 informed fire investigators that he was unaware of any alleged arson for the property.

---

[3] Defense counsel planned to discredit information related by Person 3 and relied upon by the Government by showing Person 3 had given different stories at different times concerning her relationship with the Defendant i.e. – in a public Facebook post concerning the Defendant, Person 3 related that she did not know anything about the Defendant other than his name. On November 21, 2021, Person 3 sent naked pictures of herself to the Defendant's phone during the same time period she claimed she did not know the Defendant other than his name. These texts are available for the Court for its review. The Magistrate Judge determined they were inadmissible.

5

Conspirator 1 never lived up to his potential in the Defendant's business and as a result became unproductive and a non-factor in the operation of Defendant's business.

Conspirator 1 subsequently began cooperating with the Government and purportedly related that he burned down a commercial property and introduced the Defendant to a person, Marc Mahoney, who offered to purchase property from the defendant for cash. This individual, Marc Mahoney, was also relied upon in purporting to establish probable cause to arrest the Defendant.

The Defendant, as set forth in the Affidavit, previously discussed with individuals that he did not know where Marc Mahoney obtained cash funds. Conspirator 1 told Defendant that Mahoney's family had wealth and he had "an inheritance" and also made money from the sale of baseball and basketball cards "since the time he was 16 years old."[4]

Conspirator 1 also related to law enforcement officers that "he had no idea that cash from Mahoney was derived from the sale of drugs" and further advised law enforcement officers that he [Conspirator 1] had conversations with Schwartz "where they asked each other what Mahoney does to earn money." *See*: Affidavit Complaint at Paragraph 11(c) and (d). (Exhibit "A").

The Complaint Affidavit also contained information from "a Person 1" relied upon by the Government in purporting to establish probable cause to arrest the Defendant. Person 1 could readily be identified by the Defendant from the description given in the Complaint Affidavit as a person with whom he competed with in the construction business. This individual was a former North Kingsville Police Officer who resigned

---

[4] A Mickey Mantle rookie baseball card recently sold for 2 million dollars.

following an investigation into which he is alleged to have given false information in a criminal investigation. What is clear in the Arrest Complaint Affidavit is that this individual wore an undercover wire in attempting to get the Defendant to make admissions about his involvement in an arson related to a business property owned by Defendant, through an Ohio limited liability company. The attempts to obtain admissions of criminal wrongdoing from the Defendant failed miserably.

Defendant was recorded as stating in a conversation which was recorded that "they have nothing."[5] The Defendant went on to state "do you really think I'm really that stupid" and, referring to his financial standing related "I'm so far beyond him."[6] This was in reference to Detective Taylor Cleveland, who investigated the Defendant for criminal wrongdoing. The Defendant also informed Person 1 that if he (Person 1) was going to do anything wrong with his property, "don't make me have anything to do with it." In other words, if Person 1 planned to engage in criminal wrongdoing, "count me out." *See*: Complaint Affidavit at Paragraphs 18(a) through (f). The Defendant also "patted down" Person 1 during the recorded conversation to show Person 1 he did not know, like or trust Person 1 and wanted nothing to do with him.

As related in the Complaint Affidavit, Person 1 "did not further discuss burning down the barn" with Defendant.

The Government also alleges that Defendant Rueben Schwartz instructed Person 2 to come to Defendant's house with a gun, along with a third unidentified person, drive to the residence of an unidentified person who owed Defendant money from a legitimate business transaction, to somehow shoot the third unidentified

---

[5] Complaint Affidavit, Paragraph 18(a).
[6] *Id*.

individual who owed Defendant money from a legitimate business transaction. However, and in reality, Defendant hired legal counsel, commenced litigation in the Ashtabula County Court of Common Pleas, and recovered his legitimate business debt through proper court process.[7]

Just before the Detention Hearing, it was also learned that the Defendant had been named in a one-count Indictment and charged with Conspiracy to Launder Monetary Instruments from on or about October 21, 2019 until on or about May 19, 2022. This was the only charge pending at the time of the bond hearing conducted on May 25, 2022. The Indictment was not disclosed to defense counsel until the day of the Detention Hearing.

While the one-count Indictment makes reference to conducting financial transactions to conceal proceeds "from the distribution of controlled substances", this allegation is inconsistent with facts previously related to the Government concerning the Defendant's lack of knowledge as to Marc Mahoney's purported involvement in the sale of controlled substances.

At the May 25, 2002 Detention Hearing before the Magistrate Judge, it became clear that the lead investigating agent, FBI Special Agent Watson relied heavily on individuals who had previously made conflicting statements on the same subject matter as to their relationship with the Defendant; and, that adequate conditions for release existed to reasonably assure the Defendant would not pose a risk of flight or danger to the community.

---

[7] Person 2 was not identified in the Exhibit "A" Criminal Complaint Affidavit, and Defendant received no prior notice of Person 2, prior to the Detention Hearing.

8

Accordingly, the Magistrate Judge ordered the Defendant be released to his home with electronic monitoring and could not leave his residence without prior permission and then only for visits to consult with his attorneys, his physicians for medical needs and to attend church services.

Present for the hearing at the office of defense counsel were the Defendant's twin 17-year-old boys, who literally cried for their father during the hearing and his wife Stacey. At the request of the Government, the Magistrate Judge stayed its ruling denying the Government's request for pretrial detention until the matter was addressed by the Court. The Defendant elected not to put on the testimony of his wife, Stacey, and his twin 17-year-old boys with whom he resides, as it appeared clear, the Motion to Deny Defendant's Bond by the Government would be denied. This Court should similarly deny the Government's Motion to Revoke.

### III.  LAW AND ARGUMENT:

In construing the application of pretrial detention as set forth in the provisions of the Bail Reform Act of 1984, the Supreme Court made it clear that it was only in extreme situations that an accused's liberty would be restrained prior to trial:

> "In our society liberty is the norm and detention, prior to and without trial is the carefully limited exception, which the Bail Reform Act of 1984 authorizes only after an adversary hearing in which the accused is found to pose such a threat of flight and danger to the community that no condition for release can dispel."
> *United States v. Salerno*, 481 U.S. 739, at 755 (1987).

Under 18 U.S.C. §3142(e), a statutory, but rebuttable, presumption exists for certain criminal offenses charged (21 U.S.C. §846), that no condition or combination of conditions will reasonably assure the Defendant's appearance at all required court

proceedings; or, that the Defendant will not pose an unreasonable risk of danger to the community.

In the case *sub judice*, the Defendant **is not charged** with a criminal violation to which a presumption exists against bail.  To the contrary, the Defendant is charged with a non-presumption violation to which the Magistrate Judge found conditions of release adequately exist to satisfy the imposition bond.  *See*:  *United States v. Giacomo.*, 746 F. Supp. 1176 (D. Mass. 1990) (accused was from Sicily, alleged member of the Mafia, indicted on federal racketeering charges including crimes of violence.  District Court denied Government's request for pretrial detention finding adequate conditions of release could be set to reasonable assure his appearance and reasonably assure the Defendant would not pose a danger to the community).

The standard for pretrial detention is "reasonable assurance."  A court may not order pretrial detention because there is no condition or combination of conditions which would guarantee the Defendant's appearance or the safety of the community.  *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887, 890-92 (8th Cir. 1985).

As a general rule, "the weight of the evidence" is the least important standard, under 18 U.S.C. §3142, as the caliber of evidence at a detention hearing need not comply with the Federal Rules of Evidence and liberally incorporates hearsay statements which would be inadmissible at trial.  As a result, the initial judicial officer at a detention hearing is not in a position "to make an intelligent evaluation of the weight of the evidence."  *United States v. Khashoggi*, 717 F. Supp. 1048, at 1050 (S.D.N.Y. 1989).  See also:  *United States v. Cardenas*, 784 F.2d 937 (9th Cir. 1986).  Here, the

Magistrate Judge has heard all of the uncorroborated hearsay evidence that is repeated in the Government's Motion To Revoke, and held that the Government did not meet its burden for detaining Mr. Schwartz. Pretrial Services was similarly not persuaded.

## IV. CONCLUSION:

Based on these reasons, and the Detention hearing transcript at ECF 18, it is respectfully requested that this Court deny and overrule the Government's Motion to Revoke Order of Release.

Respectfully submitted,

| | |
|---|---|
| /s – *Leonard G. Ambrose, III* | /s – *Angelo F. Lonardo* |
| **AMBROSE LAW FIRM** | **YELSKY & LONARDO, LLC** |
| **BY: LEONARD G. AMBROSE, III** | **BY: ANGELO F. LONARDO** |
| PA No. 18824 | Ohio Reg. No. 0032274 |
| 3702 Volkman Road | **BY: MITCHELL J. YELSKY** |
| Erie, PA 16506 | Ohio Reg. No. 0039295 |
| (814) 459-5900 – Telephone | 323 Lakeside Avenue, W, Ste 450 |
| (814) 459-0968 – Facsimile | Cleveland, OH 44113 |
| lambrose@ambroselawfirm.net - Email | (216) 781-2550 – Telephone |
| | (216) 781-6242 - Facsimile |
| | aflonardo@yelskylonardo.com – Email |
| | mjy@yelskylonardo.com– Email |

Counsel for **RUEBEN SCHWARTZ**

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of June, 2022, a copy of the foregoing has been filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and/or via regular United States mail, if required. Parties may access this filing through the Court's system.

/s - *Angelo F. Lonardo, Esq.*

**ANGELO F. LONARDO, ESQ.**