FILED

DEC 15 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | S U P E R S E D I N G |
| | ) | I N D I C T M E N T |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | CASE NO.: 1:22-CR-281 |
| RUEBEN SCHWARTZ, | ) | Title 18, United States Code, |
| | ) | Sections 844(h)(1), 844(i), |
| Defendant. | ) | 844(m), 844(n), 1341, 1343, |
| | ) | 1349, 1956(h), 1957 and 2 |

GENERAL ALLEGATIONS

At all times relevant to this Superseding Indictment, unless otherwise specified:

Relevant Individuals and Entities

1.     Defendant RUEBEN SCHWARTZ resided in or around Conneaut, Ohio.

2.     Conspirator 1 resided in or around Conneaut, Ohio.

3.     R&E Growth Properties, Ltd. ("R&E") was a corporate entity engaged in the real estate business, including purchasing and rehabilitating commercial and residential real estate. Defendant was the majority owner of R&E, and managed and controlled the finances and day-to-day operations of R&E.  Conspirator 1 was the minority owner of R&E.  Defendant operated R&E's finances primarily out of a bank account (the "R&E Account") at Bank 1, which was a financial institution engaged in activities affecting interstate commerce, and the deposits of which were insured by the Federal Deposit Insurance Corporation.

4.     Schwartz Construction, Ltd. ("Schwartz Construction") was a corporate entity engaged in the construction services business.  Defendant owned Schwartz Construction, and managed and controlled the finances and day-to-day operations of Schwartz Construction.

5.      Insurer 1 was an insurance company with headquarters in the State of Illinois. Among other insurance services, Insurer 1 offered fire and casualty insurance on real property within the State of Ohio.  When a property covered by an Insurer 1 fire and casualty insurance policy was damaged by a fire, the policy holder or its representative could submit a claim under the policy (a "Fire Damage Claim").  Insurer 1 maintained an email address to which customers would submit supporting documentation and other related communications concerning Fire Damage Claims (the "Fire Claim Email").  Emails sent to the Fire Claim Email were routed to servers outside the state of Ohio, including in Texas.

Relevant Properties

6.      The real estate parcel at 1003 Harbor Street, Conneaut, Ohio ("1003 Harbor"), was a property that, until on or about February 8, 2021, included a commercial building that previously housed, among other things, a dining establishment known as the "Golden Anchor" and rental apartments, but which was not occupied.

7.      The real estate parcels at 988 Harbor Street, Conneaut, Ohio ("988 Harbor"), and 191 Park Avenue, Conneaut, Ohio ("191 Park") were properties adjacent to one another on Harbor Street, situated across Harbor Street from 1003 Harbor.  988 Harbor and 191 Park (together with 1003 Harbor, the "Harbor Parcels") had previously served as parking lots for the dining establishment at 1003 Harbor.

8.      The real estate parcel at 247 Main Street, Conneaut, Ohio ("247 Main") was a property with a commercial premises.

9.      The real estate parcels at 180 Park Avenue, Conneaut, Ohio and 182 Park Avenue, Conneaut, Ohio were joined properties (together, "180/182 Park") with commercial premises.

COUNTS 1 – 6
(Wire Fraud, 18 U.S.C. §§ 1343 and 2)

The Grand Jury charges:

10.     The allegations contained in paragraphs 1 through 9 of this Superseding
Indictment are incorporated by reference as if stated fully herein.

The Scheme to Defraud

11.     From in or around 2020, through on or about May 19, 2022, in the Northern
District of Ohio, Eastern Division, and elsewhere, Defendant RUEBEN SCHWARTZ, did
knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to
defraud, and to obtain money and property by means of materially false and fraudulent pretenses,
representations, and promises, knowing that the pretenses, representations, and promises were
false and fraudulent when made, to wit: to defraud Insurer 1 by causing the submission of claims
for payment on a Fire Damage Claim concerning a fire that destroyed 1003 Harbor on or about
February 8, 2021, based on false representations and the concealment of material facts.

Purposes of the Scheme

12.     The purposes of the scheme included, but were not limited to, the following: for
Defendant and others to unlawfully enrich themselves by, among other things: (a) damaging and
destroying by fire, and causing to be damaged and destroyed by fire, 1003 Harbor;
(b) submitting, and causing to be submitted, false and fraudulent claims for payment and false
and fraudulent statements of material fact, and representations concealing material facts, to
Insurer 1 in order to receive insurance payments and inflate the size of payments from Insurer 1;
and (c) diverting fraud proceeds for Defendant's use and the use and benefit of others, and to
further and conceal the scheme.

## Manner and Means of the Scheme

13.     The manner and means by which Defendant carried out the scheme included, but were not limited to, the following:

a.     Defendant sought to purchase the Harbor Parcels, and, after submitting bids that were rejected, obtained an ownership interest in the Harbor Parcels in the name of R&E, through Conspirator 1.

b.     Defendant obtained and maintained an Insurer 1 fire and casualty insurance policy covering 1003 Harbor in the name of R&E (the "Insurer 1 Policy").  The Insurer 1 Policy had a limit of approximately $1.3 million, and insured R&E against, among other things, accidental fire damage to 1003 Harbor.

c.     Defendant obtained estimates and quotes from contractors and other vendors of goods and services for renovating 1003 Harbor.

d.     Defendant told others that the cost of renovating 1003 Harbor exceeded that which would permit R&E to turn a profit on the property through legitimate operations, and discussed with others the need to instead profit on 1003 Harbor by destroying the property and collecting insurance proceeds.

e.     Defendant consulted others to obtain information about how to destroy 1003 Harbor by setting fire to the building and making it appear to be an accident.

f.     Defendant caused limited renovations and repairs, and preparations for renovations and repairs, to 1003 Harbor to be performed, to give the appearance that Defendant always planned to complete renovations to 1003 Harbor and had expended more money and other resources on such renovations than had, in fact, been expended.

g.     Defendant prepared 1003 Harbor to be destroyed by fire, and caused such preparations to be made, such as stacking flammable materials in particular places and sealing

4

holes cut for windows to prevent bystanders from seeing smoke from the fire in time for first responders to stop the fire.

        h.      Defendant instructed others, including Conspirator 1, to set fire to 1003 Harbor using a high-powered, directional portable heater that operated by burning liquid fuel for heat in combination with a fan (a "Torpedo heater"), in order to make it appear that the fire resulted from the accidental use of the Torpedo heater, which Defendant could claim had been used to heat the building while repairs were being performed in cold weather.

        i.      Defendant, and others acting at Defendant's direction, moved a large Torpedo heater into 1003 Harbor.

        j.      Conspirator 1, acting at Defendant's direction, set fire to 1003 Harbor using the large Torpedo heater, effectively resulting in the complete destruction of 1003 Harbor.

        k.      Defendant caused to be submitted to Insurer 1 a Fire Damage Claim under the Insurer 1 Policy for the fire damage to 1003 Harbor, concealing that fact that the fire had been intentionally set.

        l.      Defendant misled investigators for Insurer 1, and others on whom Insurer 1 would rely, to believe that the fire had been accidental, and pressured others to do the same.

        m.      Defendant obtained estimates and quotes for construction services and goods, sometimes in the form of a purported invoice, and modified such documents and caused such documents to be modified, to make it appear that services had been performed and that goods had been purchased, in connection with 1003 Harbor, when in truth and in fact, those services had not been performed and those goods had not been purchased, such as by marking a quote or purported invoice as "paid" when it had not been paid.

n.      Defendant caused to be submitted to Insurer 1, through interstate wire communications sent by email to the Fire Claim Email, documents that misled Insurer 1 regarding the extent and cost of renovations that had been undertaken and completed at 1003 Harbor, including the submission of modified documents, to give the appearance that the fire was accidental and to inflate the replacement value of 1003 Harbor, thus increasing the maximum payout on the Insurer 1 Policy.

o.      Defendant caused to be submitted to Insurer 1, through interstate wire communications sent by email to the Fire Claim Email, documents that misled Insurer 1 regarding the extent and cost of materials and construction services for constructing replacement facilities for the planned 1003 Harbor facilities, including at 988 Harbor, to obtain inflated payments on the Insurer 1 Policy, including reimbursements for expenses that had not been incurred.

p.      Defendant caused Insurer 1, using the mail and other means, to send R&E payments for losses Defendant claimed in connection with the fire damage to 1003 Harbor, obtaining the maximum available payout on the Insurer 1 Policy (after depreciation) of approximately $1,153,347.98.

q.      After receiving payments on the Insurer 1 Policy, Defendant transferred money from R&E's accounts to accounts Defendant controlled and made payments and purchases for Defendant's and R&E's benefit and enrichment, including to extinguish debts on property R&E owned, such as the Harbor Parcels and 180/182 Park.

<u>Acts in Furtherance of the Scheme</u>

14.     The acts caused by Defendant in furtherance of the scheme, in the Northern District of Ohio, Eastern Division, and elsewhere, included, but were not limited to, the following:

6

15.     In or around 2020, Defendant discussed with others purchasing the Harbor Parcels and setting fire to 1003 Harbor after obtaining more than $1 million in insurance coverage.

16.     In or around August 2020, Defendant arranged for Conspirator 1, through R&E, to offer to purchase the Harbor Parcels for $130,000.

17.     On or about August 15, 2020, Conspirator 1, acting on behalf of R&E and at Defendant's direction, executed a contract to purchase the Harbor Parcels for $130,000, resulting in the transfer of title to the Harbor Parcels, including 1003 Harbor, to R&E on or about October 19, 2020.  1003 Harbor was in disrepair when R&E took possession of the property, and 988 Harbor and 191 Park were vacant lots.

18.     In or around September 2020, Defendant began to manage the initial stages of renovating 1003 Harbor, including to obtain conceptual architectural drawings of the property. Defendant told people that the property would include a retail establishment with a drive-through window for selling beer and other beverages and a dining establishment on the first floor, and rental apartments on the second floor.

19.     In or around October 2020, Defendant obtained the Insurer 1 Policy.

20.     In or around January 2021, Defendant told Conspirator 1 that Conspirator 1 would have to burn down 1003 Harbor, or someone else would have to do it.

21.     On or about February 6, 2021, Defendant, and others acting at Defendant's direction, moved a large Torpedo heater into 1003 Harbor, into the main dining room.

22.     On or about February 8, 2021, in the evening hours, Conspirator 1, acting at Defendant's direction, set fire to 1003 Harbor using the large Torpedo heater while Defendant planned to be out of town.  The fire resulted in the complete destruction of 1003 Harbor.

23.     On or about February 9, 2021, Defendant spoke with the Ohio Division of State Fire Marshal investigator who was investigating the origin and cause of the 1003 Harbor fire. Defendant, knowing that the investigator was investigating the origin and cause of the 1003 Harbor fire, misled the investigator regarding his knowledge of the origin and cause of the fire and state of the building, concealing his knowledge that he had instructed Conspirator 1 to intentionally set fire to 1003 Harbor. Defendant falsely reported that work on the beverage drive-through was complete, that he was planning to complete work on the building by April 2021, that both the large Torpedo heater and the other space heater ran continuously and had been on for three days, and that a previous fire that destroyed another property had started by accident due to the boiler turning on.

24.     On or about February 11, 2021, Defendant spoke with a certified fire investigator working on behalf of Insurer 1 to investigate the origin and cause the 1003 Harbor fire. Defendant, knowing that the investigator was investigating the origin and cause of the 1003 Harbor fire, misled the investigator regarding his knowledge of the origin and cause of the fire, concealing his knowledge that he had instructed Conspirator 1 to intentionally set fire to 1003 Harbor.

25.     On or about February 12, 2021, Defendant caused an email to be sent to the Fire Claim Email in connection with R&E's Fire Damage Claim concerning the 1003 Harbor fire, submitting documentation of work that had been completed before the fire, including an $11,550 quote for glass and door installation work, purportedly signed by the vendor's representative and by Defendant, which Defendant caused to be marked by hand as, "paid 12-30-2020 cash," when Defendant had never returned a signed copy of the quote to the vendor, the work had never been done, and neither R&E nor anyone else had ever paid the vendor.

26.     On or about February 23, 2021, Defendant caused Insurer 1 to send by mail to R&E a check for $18,493.40, for losses claimed by Defendant to have resulted from an accidental fire at 1003 Harbor.

27.     On or about May 17, 2021, Defendant caused an email to be sent to the Fire Claim Email in connection with R&E's Fire Damage Claim concerning the 1003 Harbor fire, submitting documentation of work that had been completed before the fire, including a $53,950 invoice for rubber-surface roof, from Schwartz Construction to R&E, purporting to represent the labor and materials cost to Defendant and R&E of installing a new flat rubber roof at 1003 Harbor, when no such work had been done and no such costs had been incurred.

28.     On or about June 11, 2021, Defendant caused Insurer 1 to hand-deliver to Defendant a check for $693,045.58, for losses claimed by Defendant to have resulted from an accidental fire at 1003 Harbor.

29.     On or about December 27, 2021, at approximately 9:40 a.m., Defendant caused an email to be sent to the Fire Claim Email in connection with R&E's Fire Damage Claim concerning the 1003 Harbor fire, submitting documentation of expenses for constructing a replacement for the planned 1003 Harbor facilities at 988 Harbor, including a quote for lumber and related materials for $161,579.94 for a project that was unrelated to either 1003 Harbor or the construction of the replacement facility at 988 Harbor.  The email stated that Defendant was that day "sending over copies of invoices related to" the Fire Damage Claim for 1003 Harbor, and stated, "The Grand Total will be: $416,568.21."

30.     On or about December 27, 2021, at approximately 9:54 a.m., Defendant caused an email to be sent to the Fire Claim Email in connection with R&E's Fire Damage Claim concerning the 1003 Harbor fire, submitting documentation of expenses for constructing a

replacement for the planned 1003 Harbor facilities, including a $125,000 invoice for five new HVAC systems (including the five large roof-top HVAC units and installation of the equipment, ductwork, exhaust fans, and other associated materials and service), which Defendant caused to be marked, "pd 12-26-21," when the work had never been done, and neither R&E nor anyone else had ever paid the vendor.

31. On or about December 29, 2021, Defendant caused Insurer 1 to send by mail to R&E a check for $203,233.65, for losses claimed by Defendant to have resulted from an accidental fire at 1003 Harbor.

32. On or about January 3, 2022, Defendant caused an email to be sent to the Fire Claim Email in connection with R&E's Fire Damage Claim concerning the 1003 Harbor fire, submitting documentation of expenses for constructing a replacement for the planned 1003 Harbor facilities at 988 Harbor, specifically a $231,722 invoice from Schwartz Construction to R&E for "Labor for building 1920 sq. ft. block building, called 'Beer Drive-thru'." The invoice also stated that the "total estimate for the building was $543,000."

33. On or about January 5, 2022, Defendant caused Insurer 1 to send by mail to R&E a check $109,043.70, for losses claimed by Defendant to have resulted from an accidental fire at 1003 Harbor.

34. On or about March 10, 2022, at approximately 10:02 a.m., Defendant caused a lumber company to issue an invoice to R&E for approximately $100,072.96 in lumber and related materials, charged to R&E's accounts receivable balance, with a charge of $100,072.96. The invoice bore a timestamp of "3/10/2022 10:02 AM."

35. On or about March 10, 2022, at approximately 1:55 p.m., Defendant caused the lumber company to issue an invoice to R&E negating the approximately $100,072.96 in lumber

and related materials that had been charged to R&E's accounts receivable balance hours before. The invoice listed a charge of -$100,072.96, reducing R&E's accounts receivable balance. The invoice bore a timestamp of "3/10/2022 01:55 PM."

36.     On or about March 21, 2022, Defendant caused an email to be sent to the Fire Claim Email in connection with R&E's Fire Damage Claim concerning the 1003 Harbor fire, submitting documentation of expenses for constructing a replacement for the planned 1003 Harbor facilities at 988 Harbor, including the $100,072.96 invoice for lumber and related materials, marked with the payment method of "ARCharge [charge to R&E's accounts receivable balance at the vendor] 100,072.96," which notation Defendant had caused to be circled, with the timestamp of "3/10/2022 10:02 AM," when those materials had never been purchased or provided, and neither R&E nor anyone else had ever paid the vendor or otherwise incurred any debt in connection with that invoice. Defendant did not submit the invoice timestamped "3/10/2022 01:55 PM" or otherwise make Insurer 1 aware he had caused the vendor to reverse the invoice timestamped "3/10/2022 10:02 AM."

37.     On or about March 21, 2022, Defendant caused Insurer 1 to send by mail to R&E a check for $129,531.65, for losses claimed by Defendant to have resulted from an accidental fire at 1003 Harbor.

Execution of the Scheme

38.     On or about each of the dates set forth below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, for the purpose of executing the scheme and artifice to defraud described above, and attempting to do so, caused to be transmitted writings, signs, signals, pictures, and sounds by means of wire communications in interstate commerce, as described below, to wit, the following emails to the Fire Claim Email in support of Defendant's requests for payments under the Insurer 1 Policy in connection with the Fire Damage Claim for

the fire at 1003 Harbor, submitting documentation of purported expenses for the rehabilitation of 1003 Harbor prior to the fire building the replacement structure at 988 Harbor, each transmission sent from the Northern District of Ohio, Eastern Division, routed across state lines, including through the state of Texas, each transmission constituting a separate count of this Superseding Indictment:

| Count | Approximate Date | Description of Email |
|-------|------------------|----------------------|
| 1 | February 12, 2021 | Email concerning claim ending 645G, containing documents including a signed $11,550 quote for glass and door installation work, marked, "paid 12-30-2020 cash" |
| 2 | May 17, 2021 | Email concerning claim ending 645G, containing documents including $53,950 invoice for rubber-surface roof |
| 3 | December 27, 2021 | Email concerning claim ending 645G, containing documents including a quote for lumber and related materials for $161,579.94 |
| 4 | December 27, 2021 | Email concerning claim ending 645G, containing documents including $125,000 invoice for five HVAC systems and installation, marked, "pd 12-26-21" |
| 5 | January 3, 2022 | Email concerning claim ending 645G, attaching $231,722 invoice from Schwartz Construction to R&E for "Labor for building 1920 sq. ft. block building, called 'Beer Drive-thru'" |
| 6 | March 21, 2022 | Email concerning claim ending 645G, containing documents including $100,072.96 invoice for lumber and related materials |

All in violation of Title 18, United States Code, Sections 1343 and 2.

<u>COUNTS 7-10</u>
(Mail Fraud, 18 U.S.C. §§ 1341 and 2)

The Grand Jury further charges:

39.    The allegations contained in paragraphs 1 through 9 and 11 through 37 of this Superseding Indictment are incorporated by reference as if stated fully herein.

Execution of the Scheme

40.    On or about each of the dates set forth below, in the Northern District of Ohio,

Eastern Division, and elsewhere, Defendant, for the purpose of executing the scheme and artifice

to defraud described above, and attempting to do so, knowingly caused the following matters and

things to be delivered by the United States Postal Service, and private and commercial interstate

carriers, in accordance with the directions thereon, as described below, to wit, the following

checks from Insurer 1 to R&E as payments under the Insurer 1 Policy in connection with the Fire

Damage Claim for the fire at 1003 Harbor, each mailing constituting a separate count of this

Superseding Indictment:

| Count | Approximate Date | Description of Mailing |
|-------|------------------|------------------------|
| 7 | February 23, 2021 | Check from Insurer 1 to R&E for $18,493.40 |
| 8 | December 29, 2021 | Check from Insurer 1 to R&E for $203,233.65 |
| 9 | January 5, 2022 | Check from Insurer 1 to R&E for $109,043.70 |
| 10 | March 21, 2022 | Check from Insurer 1 to R&E for $129,531.65 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

COUNT 11
(Conspiracy to Commit Mail and Wire Fraud, 18 U.S.C. § 1349)

The Grand Jury further charges:

41.    The allegations contained in paragraphs 1 through 9 of this Superseding

Indictment are incorporated by reference as if stated fully herein.

42.    From in or around January 2021, through on or about May 19, 2022, in the

Northern District of Ohio, Eastern Division, and elsewhere, Defendant RUEBEN SCHWARTZ,

Conspirator 1, and others known and unknown to the Grand Jury, did knowingly and

intentionally combine, conspire, confederate and agree together and with each other to commit

federal fraud offenses, that is, to knowingly, and with the intent to defraud, devise, and intend to

devise, a scheme and artifice to defraud, and to obtain money and property by means of

materially false and fraudulent pretenses, representations, and promises, knowing that the

pretenses, representations, and promises were false and fraudulent when made, and, for the

purpose of executing the scheme and artifice, do the following:

        a.     to knowingly transmit and cause to be transmitted, by means of wire

communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in

violation of Title 18, United States Code, Section 1343; and

        b.     to knowingly cause any matter and thing to be delivered by the United

States Postal Service, and private and commercial interstate carriers, in accordance with the

directions thereon, in violation of Title 18, United States Code, Section 1341.

Objects of the Conspiracy

43.     The objects of the conspiracy included, but were not limited to, those purposes set

forth in paragraph 12 of this Superseding Indictment, which are incorporated by reference as if

stated fully herein.

Manner and Means of the Conspiracy

44.     The manner and means by which Defendant and his co-conspirators carried out

the conspiracy included, but were not limited to, the following:

        a.     Defendant maintained the Insurer 1 Policy, which insured R&E against

losses associated with 1003 Harbor, including losses caused by fire damage to 1003 Harbor.

        b.     The allegations of paragraphs 13f through 13q of this Superseding

Indictment are incorporated by reference as if stated fully herein.

Acts in Furtherance of the Conspiracy

45.     In furtherance of the conspiracy, and to effect the objects and conceal the

existence thereof, Defendant and others performed acts in the Northern District of Ohio, Eastern

Division, and elsewhere, including, but not limited to, the following:

14

a.     The factual allegations contained in paragraphs 20 through 37 of this Superseding Indictment are incorporated by reference as if stated fully herein.

All in violation of Title 18, United States Code, Section 1349.

COUNT 12
(Use of Fire in Commission of Felony, 18 U.S.C. §§ 844(h)(1) and 2)

The Grand Jury further charges:

46.     The allegations contained in Counts 1 through 11 of this Superseding Indictment are incorporated by reference as if stated fully herein.

47.     On or about February 8, 2021, in the Northern District of Ohio, Eastern Division, Defendant RUEBEN SCHWARTZ, aiding and abetting Conspirator 1, did use fire to commit felonies prosecutable in a court of the United States, to wit: Wire Fraud as charged in Counts 1 through 6; Mail Fraud, as charged in Counts 7 through 10; and Conspiracy to Commit Wire Fraud and Mail Fraud, as charged in Count 11.

All in violation of Title 18, United States Code, Sections 844(h)(1) and 2.

COUNT 13
(Destroying or Damaging Property Used in Interstate Commerce, 18 U.S.C. §§ 844(i) and 2)

The Grand Jury further charges:

48.     The allegations contained in paragraphs 1 through 9 and 11 through 37 of this Superseding Indictment are incorporated by reference as if stated fully herein.

49.     On or about February 8, 2021, in the Northern District of Ohio, Eastern Division, Defendant RUEBEN SCHWARTZ, aiding and abetting Conspirator 1, did maliciously damage and destroy, by means of fire, a building and real property, that is 1003 Harbor, which was used in interstate commerce, and in an activity affecting interstate commerce.

All in violation of Title 18, United States Code, Sections 844(i) and 2.

<u>COUNT 14</u>
(Conspiracy to Use Fire in Commission of Felony, 18 U.S.C. § 844(m))

The Grand Jury further charges:

50.     The allegations contained in Counts 1 through 11 of this Superseding Indictment are incorporated by reference as if stated fully herein.

51.     From in or around January 2021, through on or about May 19, 2022, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant RUEBEN SCHWARTZ, Conspirator 1, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree together and with each other to use fire to commit felonies prosecutable in a court of the United States, to wit: Wire Fraud as charged in Counts 1 through 6; Mail Fraud, as charged in Counts 7 through 10; and Conspiracy to Commit Wire Fraud and Mail Fraud, as charged in Count 11, in violation of Title 18, United States Code, Section 844(h)(1).

All in violation of Title 18, United States Code, Section 844(m).

<u>COUNT 15</u>
(Conspiracy to Destroy or Damage Property Used in Interstate Commerce, 18 U.S.C. § 844(n))

The Grand Jury further charges:

52.     The allegations contained in paragraphs 1 through 9 and 11 through 37 of this Superseding Indictment are incorporated by reference as if stated fully herein.

53.     From in or around January 2021, through on or about February 8, 2021, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant RUEBEN SCHWARTZ, Conspirator 1, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree together and with each other to maliciously damage and destroy, by means of fire, a building and real property, that is 1003

Harbor, which was used in interstate commerce, and in an activity affecting interstate commerce, in violation of Title 18, United States Code, Section 844(i).

All in violation of Title 18, United States Code, Section 844(n).

<u>COUNTS 16 – 25</u>
(Engaging in Monetary Transactions in Criminally Derived Property, 18 U.S.C. §§ 1957 and 2)

The Grand Jury further charges:

54.     The allegations contained in Counts 1 through 10 and Count 13 of this Superseding Indictment are incorporated by reference as if stated fully herein.

55.     On or about the dates set forth below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant RUEBEN SCHWARTZ did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the following deposits of checks received from Insurer 1 into the R&E Account and the following outgoing transfers and checks from the R&E Account, such property having been derived from a specified unlawful activity, that is, Wire Fraud as charged in Counts 1 through 6; Mail Fraud, as charged in Counts 7 through 10; and Destroying or Damaging Property Used in Interstate Commerce, as charged in Count 13:

| Count | Approximate Date | Description of Transaction |
|-------|------------------|----------------------------|
| 16 | March 5, 2021 | Deposit of check from Insurer 1 to R&E for $18,493.40 |
| 17 | June 11, 2021 | Deposit of check from Insurer 1 to R&E for $693,045.58 |
| 18 | June 18, 2021 | Payment by check of $112,000 to entity controlled by Defendant |
| 19 | June 18, 2021 | Payment by check of $115,000 to Conspirator 1 |
| 20 | July 15, 2021 | Payment by transfer to Bank 1 of $145,125.81 to pay the outstanding balance and extinguish loan secured by the Harbor Parcels and 180/182 Park |

| Count | Approximate Date | Description of Transaction |
|-------|------------------|----------------------------|
| 21 | November 15, 2021 | Payment by transfer of $115,312.35 to purchase and obtain title to real property, to wit: a residential property on Under Ridge Road, in Conneaut, Ohio |
| 22 | January 3, 2022 | Deposit of check from Insurer 1 to R&E for $203,233.65 |
| 23 | January 7, 2022 | Deposit of check from Insurer 1 to R&E for $109,043.70 |
| 24 | February 15, 2022 | Payment by check of $20,094.02 for electrical contracting work at 988 Harbor |
| 25 | February 18, 2022 | Payment by transfer of $138,677.07 to purchase and obtain title to real property, to wit: a vacant lot on Under Ridge Road, in Conneaut, Ohio |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT 26
(Money Laundering Conspiracy, 18 U.S.C. § 1956(h))

The Grand Jury further charges:

56.     The allegations contained in Counts 1 through 10 and Count 13 of this Superseding Indictment are incorporated by reference as if stated fully herein.

57.     From in or around June 2021, until on or about May 19, 2022, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant RUEBEN SCHWARTZ did knowingly combine, conspire, and agree with Marc Mahoney (charged separately) and other persons known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: knowingly conduct and attempt to conduct financial transactions involving the transfer of title to real property and affecting interstate commerce, that is, Mahoney's cash purchases of properties in and around Conneaut, Ohio, including 247 Main and 180/182 Park, from R&E, which transactions involved the proceeds of a specified unlawful activity, that is, distribution of controlled substances in violation of Title 21, United States Code, Section 841; Wire Fraud as charged in Counts 1 through 6; Mail Fraud, as charged in Counts 7 through 10; and Destroying or Damaging Property

Used in Interstate Commerce, as charged in Count 13, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and (1) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and (2) knowing that the transactions were designed in whole and in part to avoid a transaction reporting requirement under State of Ohio and Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE

The Grand Jury further charges:

58.     The allegations contained in Counts 1-26 of this Superseding Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461 (Counts 1-11); Title 18, United States Code, Section 982(a)(2)(B) (Counts 12-15), and Title 18, United States Code, Section 982(a)(1) (Counts 16-26).  As a result of these offenses, Defendant RUEBEN SCHWARTZ shall forfeit to the United States: all property, real and personal, which constitutes—or is derived from—proceeds traceable to the offenses charged in Counts 1-11 of the Superseding Indictment; all property constituting—or derived from—proceeds defendant obtained, directly or indirectly, as the result of the offenses charged in Counts 12-15 of the Superseding Indictment; and, all

property, real and personal, involved in Counts 16-26 of the Superseding Indictment, and all property traceable to such property; including, but not limited to, the following:

      a.      $15,000.00 U.S. Currency seized on February 22, 2022, at a location in Conneaut, Ohio.

      b.      Real property located at 988 Harbor Street, Conneaut, Ashtabula County, Ohio; Permanent Parcel Number: 12-202-00-023-00.  The commercial building located on the property is known as Port District Beverage.

      c.      Approximately 43.6 acres of vacant land, Under Ridge Road, Conneaut, Ashtabula County, Ohio; Permanent Parcel Number: 12-308-00-008-00.

      d.      370 Under Ridge Road, Conneaut, Ashtabula County, Ohio; Permanent Parcel Numbers: 12-308-00-016-00 and 12-308-00-016-01.  The property consists of a single family home on approximately 140 acres

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.