UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| Plaintiff, | ) | CASE NO.: 1:22 CR 281 |
| | ) | |
| vs. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | <u>AND ORDER</u> |
| RUEBEN SCHWARTZ, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant, Reuben Schwartz's Corrected Motion to

Reopen and Reconsider Detention Order.  (ECF #58).  The Government filed a Response in

Opposition, and Mr. Schwartz filed a Reply brief in support of his motion (#60, 63).  The Court

held a hearing on the matter on June 6th, 2023.


## **PROCEDURAL HISTORY**

A Criminal Complaint was filed against Mr. Schwartz on May 18, 2022 alleging that he

had committed Money Laundering in violation of 18 U.S.C. § 1957.  (ECF #1).  He appeared

before Magistrate Judge Kathleen B. Burke on May 19, 2022 for an initial appearance and was

remanded the custody of the U.S. Marshals pending his detention hearing.  (ECF #4).   He was

officially indicted on the Money Laundering charge on May 25, 2022, and his detention hearing

was held before Magistrate Judge Burke on May 26, 2022.  (ECF #12).  At the initial detention

hearing, Magistrate Judge Burke denied the Government's request for detention and found that Mr. Schwartz could be released on a $25,000 secured, and $25,000 unsecured bond with standard and special conditions. Those conditions included removal of all of Defendant's firearms from all of his properties; home confinement with electronic monitoring; and no contact with any witness or co-defendant, directly or indirectly. (ECF #18 PageID 153-154). However. Magistrate Judge Burke stayed the order releasing Defendant to permit the Government time to appeal the ruling to the District Court Judge, therefore, no official Order of release or bond was ever docketed.

The Government appealed the Magistrate's decision on June 1, 2022. (ECF #20). The issue was briefed and this Court held a combined Arraignment and motion hearing addressing the bond issue on June 3, 2022. (ECF #23, 25, 27). Following the hearing, this Court determined that no condition or combination of conditions that would reasonably assure the safety of the community if Mr. Schwartz were permitted to be released on bond pending trial of his case. (ECF #27).

On December 15, 2022, a Superceding Indictment was issued adding multiple charges against Mr. Schwartz in this case. The Superceding Indictment includes: six counts of Wire Fraud in violation of 18 U.S.C. §§ 1343 and 2; four counts of Mail Fraud in violation of 18 U.S.C. §§ 1341 and 2; one count of Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349; one count of Use of Fire in Commission of a Felony in violation of 18 U.S.C. §§ 844(h)(1) and 2; one count of Destroying or Damaging Property Used in Interstate Commerce in violation of 18 U.S.C. §§ 844(1) and 2; one count of Conspiracy to use Fire in Commission of a Felony in violation of 18 U.S.C. §844(m); one count of Conspiracy to Destroy or Damage Property Used in Interstate Commerce in violation of 18 U.S.C. §844(n); ten counts of Engaging in Monetary

2

Transactions in Criminally Derived Property in violation of 18 U.S.C. §§ 1957 and 2; and, one count of Money Laundering Conspiracy in violation of 18 U.S.C. §1956(h).  The indictment also includes a forfeiture charge.  (ECF #47).  On December 21, 2022, Mr. Schwartz was arraigned on the Superceding Indictment and ordered to remain in pre-trial detention.  In February of 2023, Defendant waived his speedy trial rights and moved for the case to be designated as complex, which the Court granted.

In May of 2023, eleven months after this Court's initial finding that pre-trial detention was necessary, the Defendant filed a Motion to Reopen and Reconsider Detention Order.  (ECF #57, 58).  The parties fully briefed the issue and the Court held a hearing on June 6, 2023.

## STANDARD OF REVIEW

A district court, at its own discretion, may reopen a detention hearing based on changed circumstances.  18 U.S.C. §3142(f)(2)(B); *United States v. Watson*, 475 Fed. App'x 598, 601 (6th Cir. 2012).  The statute permitting reopening is to be "interpreted strictly."  *United States v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009).  The changed circumstances must have been unknown and unavailable to the Defendant at the time of the original hearing, and must have "a material bearing on the issue of whether there are conditions of release that will reasonably assure a defendant's appearance at trial and the safety of any other person in the community."  *Watson*, 475 Fed. App'x at 600; see also, Jerdine 2009 WL 4906564, at *3.  The asserted circumstances must be "something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event."  *Jerdine*, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009).

3

If the detention hearing were re-opened, the Court would re-evaluate the appropriateness of pre-trial detention under the specific circumstances of this case.  The Bail Reform Act requires detention upon a finding that "no condition or combination of conditions will reasonably assure the appearance of the person. . . and the safety of any other person and the community."  18 U.S.C. §3142(e)(1).  In order to justify detention, an inability to reasonably assure the safety of any person and the community  must be shown by clear and convincing evidence.  *See United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).   A risk of flight can be established by a preponderance of the evidence.  *Id.*

## ANALYSIS

I. Re-opening Bond Hearing

    A.  Change in Circumstance

Defendant argues the following "changed circumstances" support reconsideration of his detention: (1) no murder for hire crime was alleged in the Superceding Indictment; (2) the accusation that he attempted to hire Person 2 to kill Task Force Officer ("TFO") Taylor Cleveland was "never" credible; (3) information relating to the credibility of Person 1 and Person 2 was concealed from the defense; and (4) Defendant "never posed a credible threat to the safety of TFO Taylor Cleveland or to Person 3, a potential witness.   Of these four arguments, only number three even remotely attempts to argue an actual change in circumstance based on information not previously known by or available to the Defendant at the time of the original detention hearing.

        1.  Murder for Hire Charges

For purposes of the bond issue, Defendant does not dispute that Person 2 told law

4

enforcement officers that the Defendant offered to pay him $100,000.00 to kill TFO Cleveland.

This solicitation allegedly occurred in February of 2022, shortly after TFO Cleveland interviewed

the Defendant in connection with the current case, and searched Defendant's home.  At the time of

his original detention hearing Mr. Schwartz had not been charged with murder for hire.  He still

has not been charged with murder for hire.  The Government never claimed that they would be

filing murder for hire, or any other charges, against Mr. Schwartz in connection with the alleged

solicitation to hire Person 2 to kill TFO Cleveland.  This is not a change in circumstances, and

cannot support the reopening of the bond proceedings.

### 2. Credibility of Murder for Hire Allegation

The fact that Defendant claims that he never attempted to hire Person 2 to kill TFO Taylor

Cleveland, and that this accusation was "never" credible belies any argument that there has been a

change in circumstance on this issue.  Clearly the Defendant's position is that this accusation was

not credible at the time of the original hearings and is not credible now.  The Defense argued

against the veracity and credibility of this accusation at both prior detention hearings, before

Magistrate Judge Burke and before this Court.  At both hearings, Special Agent ("SA") Watson

testified that Person 2 told law enforcement officers that Mr. Schwartz attempted to hire him to kill

TFO Cleveland in exchange for $100,000.00.  This testimony existed at the time of the original

hearing, was consistent throughout these proceedings, and is still a part of the record.  There has

been no change to that testimony, and no new evidence challenging the credibility of SA Watson

or his recollection of the statements made during his interview with Person 2.

To the extent that Defendant is actually challenging the credibility of Person 2 and the

statements he made to law enforcement, the Defendant challenged the credibility of Person 2 at the

5

hearing before Magistrate Judge Burke and again at the original hearing before this Court. (ECF #18, PageID 113-115).   Prior to those hearings, the Defense had the same access to Person 2's public record information, including criminal and police contact information, as they do now. Even if it were not possible to obtain this information in time for the original hearings, nothing in Person 2's public records materially changes the credibility assessment of this Court.  There are no public records indicating that Person 2 has a propensity to be untruthful and the Defendant has not pointed to any crimes committed by Person 2 that demonstrate dishonesty, involve false statements, or would otherwise satisfy Rule 609's requirements for use in impeachment.   With regard to the information that Person 2 was at one time considered a suspect in the arson of a building they co-owned with Person 1, that information is not material.  The fire at the property owned by Person 2 was never determined to have been an arson, and despite a lengthy investigation, Person 2 was never charged in connection with the fire.  A years old investigation that never resulted in a finding of arson, let alone in charges against Person 2 has no material bearing on Person 2's credibility with regard to reporting an alleged solicitation asking him to commit a future crime. [1]  Further, statements by Person 2's family, as related by defense witness, Mr. Johnson, purporting to speak to Person 2's propensity for truthfulness would have been available to the defense at the time of the original hearings and do not qualify as changed circumstances.

---

[1]

In some sense it could actually enhance his credibility on this issue as it may be more likely someone would solicit him to commit a murder for hire if they believed he had previously been involved in serious criminal activity.

### 3. <u>Withholding of Information Relevant to Credibility</u>

There is no evidence that the prosecution in this case concealed, withheld, or otherwise improperly delayed providing material or other relevant information to the defense. Defendant alleges that the Government withheld information relevant to the credibility of Person 2. The information allegedly withheld was that Person 2 was investigated as a suspect in a December 31, 2016 arson in North Kingsville, Ohio. The Defendant argues that this is material to Defendant's bond issue because the allegation is relevant to his alleged dangerousness and Person 2 had reason to lie about the solicitation attempt. According to the defense's theory, Person 2 reported the alleged solicitation by Mr. Schwartz in order to "cooperate" with police and avoid prosecution for the alleged 2016 arson by "running out the six year statute of limitations," which would have expired on January 1, 2023. This attempt to conjure materiality out of a six year old arson investigation is supported by nothing but assumptions, inferences, and innuendo.

First, there has been no finding that there was, in fact, an arson. (Hrg. Transcript at 83-84). The investigation did not lead to any charges against Person 2. Person 2 was a co-owner of the property that burned down in 2016. Assistant Fire Marshall Stitt stated that he investigated Person 2 in connection with the fire, not because there was any direct evidence of his involvement, but because he had received a tip that Person 2 may have been involved in other commercial fires. (ECF #60, PageID 531, Ex. 2). He also stated that Person 2's statement regarding where he was the night of the fire was corroborated by cell phone records. The arson investigation had been ongoing for years without any progress and the available evidence had not led to any charges.

The investigation closed in February of 2022, for administrative reasons. (Hrg. Transcript at 20-21).[2] Though this coincidentally occurred mere days after the Defendant was interviewed in connection with this case, Person 2 did not report the alleged solicitation by the Defendant until March 31, 2022, more than a month after the arson investigation was closed. If the closure of the investigation had been a reward for some kind of cooperation, it would make no sense to close the investigation before Person 2 had actually put forth some information that would assist law enforcement. There is no evidence of any cooperation agreement between the government and Person 2. (Hrg. Transcript at 20-22, 36). Further, although some of the factual information set forth above, may have been known to the government through public records requests which were equally available to the Defendant,[3] these facts do not support the inferences made by the Defense.[4] The information was not turned over prior to the bond hearing because the government correctly determined that it was not material or otherwise relevant to the bond proceedings.

Upon hearing Defendant's theory that the 2016 arson investigation was allegedly connected to Person 2's testimony regarding the solicitation by the Defendant, the government investigated

---

[2]

Citations to the Hrg. Transcript reference the page numbers in the Draft Transcript prepared by the Court Reporter for the Court's use.

[3]

The investigator for the defense testified that he believed the government could have known about the 2016 arson investigation of Person 2's property because he was able to find out himself. "I think they probably– likely knew. I know, and I'm just a private investigator, I look at it that way. I found out very easily a lot of background information about [Person 1] and [Person 2]....

[4]

The Defendant's investigator testified that he received the police reports involving Person 2 through public records requests. (Hrg. Transcript at 40).

8

further. Fire Marshall, Todd Stitt was interviewed regarding the closure of the 2016 arson

investigation and agent Joseph D. Rock who conducted the interview reported the following

findings:

> cellular telephone data from [Person 2] and [Person 1] in the case, and the location data of the cellular telephones confirmed the statements given by [Person 2].
>
> The last investigative act completed in the case was an interview of a former employee of [Person 2]'s in May of 2018, and that yielded no other investigative leads.
>
> In February of 2022, the [State of Ohio Fire Marshall] changed electronic case management systems, and Stitt received an administrative order to close all of his cases in the old system, and re-open active investigations in the new case management system. Stitt closed the North Kingsville case with the intention to re-open it should additional evidence be developed. Stitt noted a 20-year statute of limitations in Ohio, and no administrative deadline for the conclusions of investigations.

(ECF #60-2, PageID 541-42). This interview belies any implication that Person 2's statement, in

March of 2022, was made to ensure the closure of the 2016 aggravated arson investigation, which

ended in February of 2022. The arson case could still be re-opened anytime for the next thirteen

plus years if new information were to arise.[5] All of the above information was provided to the

Defense at the appropriate time during the discovery process. There is no evidence of any

improper withholding of evidence or other information by the government. There is also no

---

[5] The warrant seeking phone location information identified the target offense as "aggravated arson." Under O.R.C. 2909.02, aggravated arson has a statute of limitations of twenty years. (ECF #60, PageID 531, fn. 3). Neither party has contested that this statement alone could be construed as a direct threat against TFO Cleveland. (See, e.g., Hr. Transcript at 10). Defendant claims, however, that he never actually said this to TFO Cleveland, despite bragging to Person 1 that he said it and that it frightened TFO Cleveland.

9

evidence that the 2016 arson investigation, or any other newly discovered evidence, is material in assessing Person 2's credibility or the appropriateness of the Defendant's detention in this case.

4. <u>Credibilty of Threats to TFO Cleveland and Person 3</u>

a. <u>TFO Cleveland</u>

SA Watson testified that Defendant's alleged solicitation of Person 2 to kill TFO Cleveland was a credible threat and security precautions were implemented to protect TFO Cleveland and his family. (ECF #60, Ex. 1, Teletype from DEA Cleveland RO.) It was, in fact, taken so seriously that law enforcement accelerated Mr. Schwartz's arrest, tipping their hand to on-going investigation by charging Mr. Schwartz with the first crime for which they could establish probable cause in order to get him off the streets, rather than waiting until all of the charges under investigation were ripe for presentation to the grand jury. (ECF #43, PageID 400-401, 415).

As set forth above, the defense has attempted to discredit Person 2, the source of the information about the alleged solicitation attempt, based on unproven allegations and unsupported inferences. Whether or not a jury may find Person 2 credible at trial, the evidence currently before the Court indicates that Person 2, approached law enforcement to inform them that the Defendant attempted to hire him to murder TFO Cleveland. Despite many contacts with the police, there is no evidence that Person 2 has ever been arrested, let alone convicted, for a crime that would cast dispersion on his veracity. (Hrg. Transcript at 41-42; Def. Ex. 1). There is also no evidence that Person 2 has ever filed a false police report. (Hrg. Transcript at 101). Further, Defendant sent an investigator to talk to Person 2 about the alleged solicitation and he remained steadfast in his account. When the Defendant's investigator, Jeffrey Johnson approached him for an interview, Person 2 declined to conduct a full interview but answered the interviewer's question about

whether Person 2 believed Mr. Schwartz was serious when he offered to pay to have TFO

Cleveland killed, Person 2 responded: "one hundred per cent." (Hrg. Transcript at 80-81). He

made this statement despite having indicated a fear of retribution by Mr. Schwartz. That fear was

based on other threatening and intimidating behaviors he claims to have seen Mr. Schwartz

perform. (Hrg. Transcript at 53-55).[6] None of the allegedly new information obtained by the

Defendant is materially alters this Court's assessment of Person 2's credibility in this matter.

SA Watson also testified that he found Person 2's account of the murder for hire

solicitation to be credible, in part, because Mr. Schwartz had made other inappropriate comments

to TFO Cleveland with the intention of threatening or intimidating him. Investigators had audio

tape of Mr. Schwartz admitting to these comments and bragging about how he had intimidated

TFO Cleveland. (ECF #43, PageID 416). Specifically, Mr. Schwartz, when showing TFO

Cleveland to his house for a search, tried to get him to follow him alone to the backyard, and when

TFO Cleveland refused, Mr. Schwartz stated: "if I wanted to shoot you, you would already be

dead." (ECF #43, PageID 401, 416). The defense admits that Mr. Schwartz told Person 1 that he

---

[6]

   The Defendant's investigator opined that Person 2's account of Mr. Schwartz's violent
intentions and actions he took to attempt to collect a debt in 2018 encounter was
contradicted by a police report. The Court finds no such contradiction. Person 2 reported
that Mr. Schwartz took weapons and other individuals, acting as his "muscle," to the
house of someone who owned him money. According to Person 2, Mr. Schwartz
expressed the intent of using force, up to and including killing the debtor, in order to get
his money back. The debtor was not at home when they arrived. Person 2 stated that
subsequently, Mr. Schwartz proceeded to seek recovery of the debt through a civil action.
The police report discovered by the defense indicates that police responded to a report by
Person 2 of theft, by way of failure to pay a debt. This was the same debt that Mr.
Schwartz had allegedly attempted to collect by force. When the police investigated they
advised that it was a civil matter. It is fully plausible that the police report was made after
the attempt to intimidate the debtor into paying, and is what spurred Mr. Schwartz to
pursue payment through a civil action.

said these words to TFO Cleveland. (Hrg. Transcript pg. 14). This is not new information; it was known by Mr. Schwartz and was available to the defense at the prior hearings. In fact, it was included in the Affidavit supporting the Complaint which was proffered as evidence at the original bond hearing before Magistrate Judge Burke. (ECF #1-2, PageID 21-22; Def. Ex. 7).

Mr. Schwartz admits that he told Person 1 that he made this threat to TFO Cleveland, and he emphasized how much it scared TFO Cleveland. (ECF #58, PageID 512, 515-16). Now, he is arguing that he never actually said this to TFO Cleveland and is trying to downplay his statement to Person 1 as mere "braggadocio." (Hrg. Transcript at 14). This argument is simply not credible. The defense even admits that TFO Cleveland corroborated that Mr. Schwartz did, indeed, say something like that to him during the search. (Hrg. Transcript at 15). Mr. Schwartz also admittedly owns an unknown number of weapons and ammunition, which adds gravity to these threats. He has a reputation in the community for owning a large number of guns and suggested in his recorded conversation with Person 1 that the number approaches or exceeds one hundred weapons, including machine guns. (ECF #43, PageID 415, 16; ECF #58, PageID 512). All of the information the defense has argued in connection with this threatening statement made to TFO Cleveland during the search was known the Defendant at the time of the original hearing(s). There are no change circumstances or new information related to this encounter that could justify reopening the bond proceedings. Even Defendant's own argument that there was "never" a credible threat to TFO Cleveland presumes that this has not changed over time. Therefore, this argument does not satisfy Mr. Schwartz's burden of producing new or otherwise previously unavailable information that would justify reopening the bond proceedings.

b.  <u>Person 3</u>

Person 3, a potential witness against Mr. Schwartz, reported to law enforcement that they had been threatened by Mr. Schwartz.  Mr. Schwartz allegedly told this individual that if this case goes badly for him that individual would end up dead and buried under one of his properties. Though this witness did not originally take him seriously, once the charges against him were unveiled, the individual felt threatened and afraid.  This threat was known to the defense prior to the original bond hearing before Magistrate Judge Burke.  It was included in the Affidavit supporting the Complaint, which was made part of the record at that hearing.  (ECF #1-2, PageID 21-22; Def. Ex. 7).  Defense counsel also cross-examined SA Watson on issues concerning the credibility of claims made by Person 3, and about Person 3's relationship with Mr. Schwartz at original hearing before Magistrate Judge Burke.  (ECF # 18, PageID 116-122).  The defense has not presented any new evidence relating to Person 3 that would affect the Court's view of this individual's statements regarding the perceived threat allegedly received from Mr. Schwartz. There is no allegation whatsoever that the defense is now aware of any relevant information about these statements or this individual that was not previously known by or available to the Defendant. Thus, the defense has failed to demonstrate any change in circumstances relative to this issue that would warrant reevaluating his detention determination.

The Defendant has failed to meet his burden of showing that there have been any changed circumstances or that any new information has been discvored that would have a material bearing on whether bond is appropriate in this case.  Therefore, there is no justification for reopening his bond hearing.  Further, the Defendant has failed to present any new evidence that would undermine the initial determination that detention is appropriate in this case.

13

II. Pre-trial Detention

Even if the Court were to reopen the bond proceedings, detention would still be warranted under all of the circumstances. The Bail Reform Act, 18 U.S.C. Section 3142 permits pre-trial detention if a judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id*; *United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095 (1987). In determining whether there is a justification for detention based on the safety of others and the community, the Court is required to consider four factors: (1) the nature and circumstances of the crime charged, including whether it involves a firearm or a controlled substance offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that defendant's release would pose. 18 U.S.C. §13142(g).

Further, in this case, due to the nature of the charges in the Superceding Indictment, there is now a presumption of detention that was not operative at the time of the initial detention determination. Count Thirteen of the Superceding Indictment charges a violation of 18 U.S.C. §844(I), which is an offense listed in 18 U.S.C. §2332b(g)(5)(B) and carries a maximum penalty of twenty years of imprisonment. A presumption of pre-trial detention exists for crimes listed in §2332b(g)(5)(B) "for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. §3142(e)(3)(C). Therefore, pursuant to 18 U.S.C. §3142(e)(3), "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."

14

This presumption may be rebutted by the production of evidence which shows that "he does not pose a danger to the community or a risk of flight." *United States v. Stone*, 608 F.3d 939 (6th Cir. 2010), citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). In order to satisfy this burden, the Defendant must produce at least some evidence contrary to the presumed fact. *Stone* at 945, citing *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991*); United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991). Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Mercedes,* 254 F.3d at 436. This is because the presumption reflects a legislative determination that certain types of offenders "are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985).

The nature and circumstances of the offenses charged include arson, which carries with it a presumption of dangerousness that justifies pre-trial detention. Arson undisputedly poses a great risk of harm to the community both through the risk of personal injury to first responders and bystanders and through economic harm to the community. The Defendant has not offered any evidence whatsover that would rebut the presumed dangerousness based on the nature of the charges. He has produced no evidence contrary to the presumed fact that a person charged with arson poses a danger to the community based on the nature of the charges, as would be required under *United States v. Stone*, 608 F.3d 939.

15

Even though it is not necessary to the Court's finding because Mr. Schwartz has failed to overcome the presumption of detention, the proffered evidence of dangerousness, specific to this Defendant, is also strong. Despite the Defendant's attempts to discredit Person 2's statement regarding the solicitation to kill TFO Cleveland, that person has been consistent in his statements and there is no evidence of any reasonable motivation for him to lie about these allegations. Further, as set forth below, the Defendant himself has admitted that he tried to lure TFO Cleveland away from other law enforcement officers during the search and told him "if I was going to shoot you, you'd be dead already asshole." (ECF #58, PageID 512-13; Def. Ex. 21, p. 21).

There is also undisputed evidence that Mr. Schwartz owns a multitude of guns and ammunition, and the evidence suggests that this number exceeds the number that were cleared from the home when it was being prepared for potential home confinement. (ECF #43, PageID 415, 16; ECF #58, PageID 512). When his house was cleared for pre-trial placement 48 weapons were taken out of the home. Weapons were removed and given to the custody of a family friend. (Def. Ex. 37). His unsigned and undated proffer, offered at the most recent hearing, indicated that all guns were removed "as confirmed by pretrial services." (Def. Ex. 33). However, when the Defendant's investigator/expert went through the house on or about May 31, 2023, an additional six weapons, ammunition, and archery equipment were found and allegedly removed. (Ex. 37). There is no evidence as to the total number of weapons Mr. Schwartz owns or where they are all currently located. The Defendant does not have a significant prior history of criminal activity, but there is significant evidence that he has physically threatened multiple people, has access to weapons, and has significant financial resources at his disposal.

16

Magistrate Judge Burke found that there was some evidence that Mr. Schwartz may have threatened witnesses or caused other people to threaten witnesses on his behalf. (ECF #18 PageID #154).   SA Watson and others at the FBI found the report of the Defendants solicitation of murder for hire to be credible and security precautions were implemented to protect TFO Cleveland and his family.  (ECF #60, Ex. 1, Teletype from DEA Cleveland RO.)  It was, in fact, taken so seriously that law enforcement accelerated Mr. Schwartz arrest, tipping their hand to on on-going investigation by charging Mr. Schwartz with the first crime for which they could establish probable cause in order to get him off the streets, rather than waiting until all of the charges under investigation were ripe for presentation to the grand jury.   (ECF #43, PageID 400-401, 415). The Defendant's attempts to discredit Person 2, the source of the information about the alleged solicitation attempt, are based on unproven allegations and unsupported inferences.   This Court also finds that there is clear and convincing evidence that Mr. Schwartz has threatened individuals associated with the investigation of this case.  None of the arguments presented by the Defendant constitutes new evidence that would materially alter the Court's previous determination.  The only change is that there is now an additional presumption of detention that did not exist at the time of the original hearing, and the Defendant has not presented any evidence that would rebut this presumption of detention.

## CONCLUSION

For the reasons set forth above, the Court finds that there is no condition of combination of conditions that could adequately protect individuals and the community from danger if Mr. Schwartz were to be released pending trial.  Mr. Schwartz's Motion to Reopen Detention Hearing

17

is, therefore,  DENIED.  (ECF #58).

The Court is cognizant that Mr. Schwartz has been in custody for an extended period of time while this case has been proceeding, however, both this Court and the Government are ready to proceed to trial at any time.  The Defense has requested the prior continuances and was not prepared to set a trial date at the close of the last hearing.  A status conference has been set at the Defendant's request for July 21, 2023 at 9:00 a.m., by telephone.  The Court is prepared to set a trial date as soon as the defense is prepared to proceed.        IT IS SO ORDERED.


DONALD C. NUGENT
United States District Judge

DATED  June 14, 2023

18